# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS OWENS, | ) 1:03-cv-05327-LJO-TAG-GSA HC |
|              Petitioner, | ) FINDINGS AND RECOMMENDATIONS DENYING PETITIONER'S MOTIONS FOR INDICATION OF WILLINGNESS TO ENTERTAIN REMAND AND MOTION FOR REMAND (Docs. 77 & 80) |
|     v. | ) |
| E. ROE, | ) ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY DAYS |
|              Respondent. | ) |

Petitioner is a state prisoner proceeding pro se in an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner is in custody of the California Department of Corrections serving two concurrent indeterminate sentences of 25 years-to-life pursuant to a judgment of the Superior Court of California, County of Fresno. On November 5, 1999, Petitioner was convicted by jury of burglary, attempted burglary, and possession of burglary tools. (Cal. Pen. Code §§ 459, 466, 664). (Clerk's Transcript on Appeal ("CT"), 67-71). In a bifurcated court trial, the state court found that Petitioner had suffered six prior "serious" or "violent" felonies that qualified as strikes under California's "Three Strikes" law (Cal. Pen. Code §§ 667(d) & (e)). (Reporter's Transcript

on Appeal ("RT") 336-337).  On December 3, 1999, Petitioner was sentenced to two concurrent indeterminate terms of 25 years-to-life with the possibility of parole.  (CT 247-248; RT 426).

On March 17, 2003, Petitioner filed his original habeas corpus petition in this Court challenging his conviction and sentence.  (Doc. 1).  On June 26, 2003, Petitioner filed his first amended petition, again challenging his conviction and sentence.  (Doc. 11).

On February 12, 2007, the Magistrate Judge filed Findings and Recommendations that recommended denial of the petition on its merits and which were served on all parties and which contained notice that any objections to the Findings and Recommendations were to be filed within twenty days.  (Doc. 38).  Petitioner filed objections on March 5, 2007.  (Doc. 43).  On April 20, 2007, the Court entered an order adopting the Magistrate Judge's Findings and Recommendations and denying Petitioner's application for a writ of habeas corpus on the merits. (Doc. 53).  Judgment was entered on April 20, 2007.  (Doc. 54).

On May 22, 2007, Petitioner filed a notice of appeal from the Court's judgment.  (Doc. 59).  On June 1, 2007, the Court denied Petitioner's request for issuance of a certificate of appealability.  (Doc. 62).  On November 30, 2007, the Ninth Circuit granted a certificate of appealability as to the following issue: Whether the evidence is sufficient to support the appellant's convictions for burglary, attempted burglary and possession of burglary tools.  (Doc. 69).

However, before Petitioner filed his opening brief, he apparently requested a stay of appellate proceedings in order to file with this Court, on June 24, 2009, a Request to Entertain a Limited Remand to conduct an evidentiary hearing to determine whether certain physical evidence Petitioner contends is critical to his appeal has been destroyed by the Fresno County Superior Court.  (Doc. 77).  On September 23, 2009, before the Court could respond to the first motion, Petitioner filed a Motion for Remand, requesting, pursuant to 28 U.S.C. § 2254(f), a limited remand in order for this Court to conduct a hearing to determine whether the Fresno County Superior Court has destroyed evidence used in the original criminal trial and, if so, whether there is sufficient evidence after the destruction of such evidence to convict Petitioner. (Doc. 80).  Petitioner specifically references the following items of physical evidence as possibly

1  having been destroyed by the Superior Court: photographs of the vehicles; photographs of the
2  search marks on these vehicles; photographs of the area; Nike gloves; screwdriver; and glass
3  fragments. (Doc. 80, pp. 3-4).[1]
4      On September 24, 2009, the Court ordered Respondent to file a response to Petitioner's
5  two motions. (Doc. 81). On October 19, 2009, Respondent filed the response. (Doc. 84). On
6  October 21, 2009, Petitioner filed a reply to Respondent's response. (Doc. 85).

**DISCUSSION**

After carefully reviewing Petitioner's two motions, Respondent's response, and Petitioner's reply to Respondent's response, the Court, for the following reasons, concludes that Petitioner's motions and requested relief are not supported either by the law or the facts. Accordingly, the Court will recommend denying Petitioner's request for a limited remand to conduct an evidentiary hearing.

A.  Factual Background.

1.  Evidence Presented At Trial.

On August 12, 1999, Harold Fielding, a paramedic supervisor for American Ambulance, was returning in an ambulance to the company parking lot with his partner when he observed someone standing by his car. (RT 119-120). The suspect was an African-American male about 5'9' and weighing about 180 pounds. (RT 121). The man, subsequently identified by Fielding as Petitioner, appeared to be looking into Fielding's car. (RT 121;126). Fielding and his partner continued driving into the parking lot, then stopped the ambulance, and got out. (Id.). At that point, Petitioner, who had been standing next to Fielding's car, apparently saw Fielding, went around the back of the car, and crouched or sat down near the rear bumper. (Id.).

Fielding immediately noticed that the front window was broken out of his car and there was a tool mark underneath the door-latch mechanism. (RT 124). He noticed that a nearby car, a

---

[1] In his reply to Respondent's response, Petitioner alleges that, although all "Exhibits in the state court's possession were destroyed by the court, some replacement photographs have been located and are available to be included in the record." (Doc. 85, p. 2). Petitioner does not indicate what the replacement photographs depict.

3

1  gold Honda Accord, also had a broken window.  (RT 128).  Fielding notified the company
2  dispatcher that a possible break-in of his car had occurred.  (RT 125).  Another employee,
3  Stephen Flick, heard Fielding's report on the radio and joined Fielding and his partner as they
4  walked toward Fielding's car.  (RT 125).

5        As the three approached Petitioner, the latter moved away from Fielding's car and left the
6  parking lot.  (RT 125).  Before leaving, he said to Fielding, "I didn't do anything."  (RT 135).
7  Fielding observed that Petitioner had a blue bandana in his hand.  (RT 136).  Fielding and Flick
8  followed Petitioner until they lost him near some court buildings.  (RT 127).  Fielding then saw a
9  police officer and talked to him, giving him Petitioner's description.  (RT 127; 131).  Shortly
10 thereafter, Fielding heard on the company radio that Flick had located Petitioner hiding nearby.
11 (RT 132).  Fielding went to assist Flick and found the two standing in the street.  (Id.).  Petitioner
12 was wearing the same clothes Fielding had observed earlier in the parking lot.  (Id.).  The police
13 arrived almost simultaneously with Fielding.  (Id.).  Nothing was missing from Fielding's car.
14 (RT 133).

15       Flick testified that he responded to Fielding's radio call about assistance in the parking
16 lot.  (RT 165).  When he arrived, Flick saw Fielding and his partner in the parking lot and saw a
17 man running from Fielding's car.  (RT 166).  Fielding told Flick someone had just broken into
18 his car and another car in an adjacent row and that the suspect was walking across the parking
19 lot.  (RT 166).  Flick said, "Let's go get him," and started running after Petitioner.  (RT 166).
20 Petitioner started running as well.  (RT 167).  Flick turned back to see if others were following
21 him and when he turned back, Petitioner had disappeared.  (RT 167).

22       Flick notified the dispatcher of his location and waited for police to arrive and also to see
23 if there was any movement in the bushes.  (RT 168).  Flick then heard some rustling behind a
24 brick wall so he looked over the top of the wall and saw Petitioner lying against the wall with his
25 arms crossed down near his waist and a hat over his face.  (RT 169).  Flick notified police via his
26 radio at which point Petitioner jumped up and said, "I don't know what you're talking about."
27 (RT 170).

28       Flick told Petitioner to sit down, and Petitioner put his hands up in the air and started

yelling "he didn't know what [Flick] was talking about, it wasn't him, and that you have the wrong person." (RT 171). Flick told him to sit down until police arrived. (Id.). Petitioner then put a blue bandanna in his pocket. (Id.). Flick noticed a screwdriver next to Petitioner's foot that he later pointed out to the police officer, who picked it up. (RT 171).

Brady Gilman, another ambulance company employee, testified that he had driven to work in a Honda Accord owned by a friend, Scott Mooneyham. (RT 181). He locked the car and the windows were intact at that time. (RT 182). Later, Gilman was notified that the car may have been broken into, so he went to the parking lot and saw that the side window had been shattered. (RT 182). Gilman also observed that the inside of the car had been "gone through," the center console was open, and various items were scattered all over the car. (Id.). Gilman also observed multiple pry marks on the door. (RT 183).

Wendell Austin, a Fresno Police Department officer, testified that he investigated the two car burglaries and interviewed the victims. (RT 143). At trial, he testified that when he apprehended Petitioner he had a pair of Nike gloves and that Flick drew Austin's attention to a screwdriver lying near Petitioner. (RT 195). Austin noted that the area where Petitioner had been lying at the base of the wall had an imprint of two legs with the screwdriver in between, as if Petitioner had been lying there with the screwdriver between his legs. (RT 201). Austin asked Petitioner to remove his shoes, and when he did, several pieces of safety glass like those found in automobiles fell out. (RT 197). A cassette tape, The Best of the doors, was also found on Petitioner when Austin confronted him. Although it was later determined that the cassette had been taken from the Honda, that fact as never established at trial. (RT 409).

Scott Mooneyham testified that he lent his Honda Accord to a friend, Gilman, so he could drive to work. (RT 223). Gilman returned the car with a smashed passenger window and pry marks on the rubber around the window. (RT 223).

Petitioner was charged with two counts of second degree burglary for the burglarizing of Fielding's and Mooneyham's cars. (CT 50-51.) Petitioner was also charged with one count of possession of burglary tools, i.e., the screwdriver. (CT 51). The information also charged Petitioner with six prior serious or violent felonies within the meaning of the Three Strikes law.

5

(Id.). The jury found Petitioner guilty of the lesser included offense of attempted burglary of Fielding's car, but found him guilty of the burglary of Mooneyham's car. (CT 68; 69). The jury also found Petitioner guilty of possession of burglary tools. (CT 70). The trial court later found that Petitioner had committed six prior serious or violent felonies within the meaning of the Three Strikes Law.

### 2. Petitioner's Insufficient Evidence Claim.

In his first amended petition in this case, Petitioner contended, inter alia, that the prosecution had failed to prove every element of the charge of burglary beyond a reasonable doubt in that insufficient evidence of "entry" was presented. (Doc. 11). In analyzing that claim, this Court applied the standard set forth in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979):

> "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

(Doc. 38, p. 13).

The Court also noted that it must presume the correctness of the state court's factual findings, 28 U.S.C. § 2254(e)(1), Kuhlmann v. Wilson, 477 U.S. 436, 459, 106 S.Ct. 2616 (1986), and that the same presumption must be applied to the facts as found by the state court underlying any determinations of legal questions or mixed questions of law and fact. Sumner v. Mata, 455 U.S. 591, 597, 102 S.Ct. 1303 (1982). (Doc. 38, p. 14).

Applying the above standards to Petitioner's claim of insufficient evidence, the Court concluded that the claim was utterly without merit. (Id. at p. 13). In its analysis, the Court emphasized that substantial evidence was presented from which a reasonable juror could have concluded beyond a reasonable doubt that Petitioner had illegally "entered" the Honda:

> The Honda's doors were locked, its window had been smashed and items within the car had been strewn around the passenger compartment, thus circumstantially establishing that someone had illegally "entered" the locked car. Petitioner was seen standing next to and peering into Fielding's car, which also had a smashed window. Fielding's car was near the Honda in the parking lot. Petitioner was followed from Fielding's car to the point where he was arrested. Austin discovered Petitioner had gloves and a screwdriver nearby. Fielding had earlier observed Petitioner with a blue bandanna in his hand.
>
> Any reasonable juror could have concluded beyond a reasonable doubt that petitioner

used the gloves and bandanna to protect his hands while he pried the windows of the two cars with the screwdriver. Any reasonable juror could easily have concluded beyond a reasonable doubt that Petitioner had done this to both the Honda and Fielding's car, although they convicted Petitioner of only burglarizing the Honda, having convicted Petitioner of the lesser included offense of attempted burglary as to Fielding's car. This result is reasonable considering that nothing was missing from Fielding's car and no evidence was presented that the contents of that car had been disturbed.

However, and to directly address Petitioner's argument here, items within the Honda had been strewn around the passenger compartment of that car, indicating that whoever had broken the window had, necessarily, entered the car within the meaning of the burglary statute. Since substantial circumstantial evidence was presented that Petitioner was that individual, it was reasonable for the jury to find that Petitioner had effected an entry into the Honda. [Citation omitted.] Moreover, that same circumstantial evidence was sufficient to establish that Petitioner had the requisite specific intent at the time he gained entry to the Honda.

In light of the foregoing, and viewing the evidence in the light most favorable to the prosecution, this Court concludes that any rational trier of fact could have found the essential elements of the crime of burglary of the Honda beyond a reasonable doubt. Jackson, 443 U.S. at 319. Thus, the state court did not make a determination that was contrary to or an unreasonable application of clearly established federal law when it rejected Petitioner's contention. Accordingly, Ground Two must be denied.

(Doc. 38, pp. 16-17).[2]

In his objections to the Magistrate Judge's Findings and Recommendations, Petitioner did not focus in any respect on the specific physical evidence now the subject of his two motions for limited remand. To the contrary, Petitioner contended that insufficient evidence was presented on the specific intent element and the entry element of burglary, (Doc. 43, p. 12), and, in support of his contentions, Petitioner argued that the police permitted Mr. Gilman to enter the Honda to determine if items had been stolen, and permitting Gilman to enter the car "move[ ] some things around" before "the arresting officer had a chance to perform his investigative analysis" was not "standard procedure" and, presumably, compromised the integrity of the police investigation.

---

[2] The Court construed Petitioner's Ground Two in the First Amended Petition to raise a claim only as to the burglary conviction for the Honda. This is because Petitioner framed his claim as insufficient evidence of burglary, not insufficient evidence of either attempted burglary, or possession of burglary tools, the other two charges for which Petitioner was convicted. Although it appears that the Ninth Circuit has expanded Petitioner's insufficiency claim to include those other convictions, in the context of these motions, this Court continues to construe the First Amended Petition to raise a claim of insufficiency only as to the charge of burglary of the Honda.

(Doc. 43, pp. 13-14).  Although Petitioner complained strenuously regarding this purported "irregularity," he never explains how Mr. Gilman's entry into the Honda actually prejudiced the investigation, produced a false identification of Petitioner, or resulted in the conviction of an innocent person.  More importantly, Petitioner's objections do not turn on the existence of any specific physical evidence; rather, Petitioner complained about Gilman's <u>entry</u> into the Honda, thereby disturbing the crime scene.[3]

B.  <u>Petitioner's Motions Lack A Legitimate Legal Basis</u>.

Petitioner contends that this Court is not only authorized to grant a limited remand but that such a limited remand is mandated by 28 U.S.C. § 2254(f).  (Doc. 80, p. 1).  The Court agrees with Respondent that Petitioner has entirely misread § 2254(f).

That section provides as follows:

> If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall provide that part of the record pertinent to a determination of the sufficiency of the evidence to support the determination.  If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official.  If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination.

28 U.S.C. § 2243(f).

As Respondent correctly observes, § 2254(f) follows both § 2254(d)(2) and § 2254(e), both of which concern post-judgment "State court proceedings" in which a state court adjudicates a claim that the state court judgment was improper.  (Doc. 84, p. 4).  Thus, it is reasonable to construe § 2254(f) as referring to the same procedural context.  Construing the provision in that way, it is patent that the phrase "to support the State court's determination of a factual issue made therein" refers to factual determination made by the State court in the collateral proceedings, not to factual determinations made by the State court in the original criminal trial or direct appeal from that trial.  Accordingly, the Court rejects Petitioner's contention that § 2254(f)

---

[3]Petitioner's objections also contended that he wished to have an evidentiary hearing in order to present "additional evidence."  (Doc. 43, p. 15).

even implicates, much less mandates, this Court's exercise of jurisdiction to conduct a limited remand for the purposes expressed in Petitioner's motions.

In his reply to Respondent's response, Petitioner contends that he "seeks to include this [destroyed physical] evidence as part of these proceedings in order to have a complete record for this court to consider." (Doc. 85, p. 1). Petitioner also contends that a limited remand would promote the "ends of justice" and would avoid a "miscarriage of justice and protect Mr. Owens' colorable claim of factual innocence and thereby, allowing him a full and fair opportunity to present his claims of insufficiency of the evidence." (Id. at p. 3). However, neither of these points provides a specific legal basis for this Court to order a limited remand for purposes of conducting the type of evidentiary hearing Petitioner is now requesting. Absent an articulable and sound legal basis for ordering such a limited remand, the Court declines to issue such an order.

C. Petitioner's Motions Lack A Legitimate Factual Basis.

Just as significantly, Petitioner's motions lack any factual basis justifying the requested relief. Notwithstanding Petitioner's protestations regarding a miscarriage of justice and despite his claim that such a remand is required to fairly and equitably consider all the evidence, (Doc. 85, p. 3), it is quite evident that none of the physical evidence in question is relevant to the Court's legal determination regarding the merits of Petitioner's insufficiency claim. In other words, even if, arguendo, Petitioner had discovered the purportedly destroyed evidence during the original federal habeas proceedings, even if Petitioner had timely raised this issue in a request to conduct an evidentiary hearing during the pendency of the first amended petition, and even if Petitioner had presented the Court with a sound legal basis for exercising such authority, the Court would have declined to conduct an evidentiary hearing for the simple reason that the purported destruction of the now-challenged physical evidence does not alter the Court's legal analysis of Petitioner's insufficiency claim.

Petitioner's two motions for limited remand provide no legitimate reasons why the purported destruction of certain physical evidence would impair this Court's legal analysis of Petitioner's sufficiency claim or impinge upon the Ninth Circuit's appellate review of the District

1  Court's judgment.  Petitioner is not entitled to de novo review of the State court adjudication of
2  his sufficiency claim.  Nor does this Court's authority to order an evidentiary hearing in these
3  habeas proceedings permit the Court to essential re-try the burglary charge in federal court.
4  　　　Although Petitioner implies in his objections that Gilman's disturbance of the Honda
5  crime scene may have prejudiced the discovery of potentially exculpatory evidence, e.g.,
6  evidence of the presence of unidentified suspects, in actual fact no forensic evidence derived
7  from the purportedly destroyed physical evidence was ever presented at trial to establish identity,
8  specific intent, or actual entry into the Honda, the grounds on which Petitioner now challenges
9  the sufficiency of the evidence supporting the burglary conviction.  For example, the prosecution
10 did not offer at trial any forensic analysis of the tool marks on the vehicles, nor any forensic
11 testing of the glass fragments collected near the Honda, nor the results of any fingerprint or DNA
12 testing on the Nike gloves or screwdriver.  The purportedly destroyed photos of the vehicles, the
13 scratch marks, and the area were merely corroborative of the actual testimony of percipient
14 witnesses.
15 　　　Nor did this Court consider, or need to consider, such forensic evidence, or lack thereof,
16 in its own analysis of the merits of Ground Two.  Rather, the Court's analysis was limited, as
17 federal law requires, to a review of the sufficiency of the circumstantial evidence presented at
18 trial and that is recounted in a preceding section of this Order, viewing, as the Court must, all of
19 that circumstantial evidence in the light most favorable to the prosecution.  Accordingly, the
20 possible subsequent destruction of the actual physical evidence itself, *quite apart from its*
21 *probative value as circumstantial evidence deriving from the testimony regarding the presence of*
22 *and location of such physical evidence near the crime scene and near Petitioner when he was*
23 *arrested*, does not in any way vitiate the legal quantum of evidence presented at trial and
24 previously found substantial by both the State court and this Court.  Hence, no salutary purpose
25 could be served by permitting a limited remand to conduct an inquiry into the destruction of that
26 physical evidence or the effect of its absence on the resolution of Petitioner's sufficiency claim.

27 　　　　　　　　　　　　　　　　**RECOMMENDATIONS**
28 　　　For the foregoing reasons, the Court HEREBY RECOMMENDS that Petitioner's Motion

to Entertain a Limited Remand (Doc. 77), and Petitioner's Motion for Limited Remand (Doc. 80), be DENIED.

      This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty (20) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    October 29, 2009**              /s/ Sandra M. Snyder
                                              UNITED STATES MAGISTRATE JUDGE